# MARY J. H. DUNCAN

## vs.

## WILLIAM J. HISS ET AL.

*Trustees' Sale—Fairness—Adequacy of Price.*

A private sale, made after the property had been offered at public sale and withdrawn for lack of suitable bids, by trustees who were authorized by decree of court to make either a public or private sale of the property, *held* to have been fairly made.

pp. 607, 608

A private sale of land by trustees *held* not to have been at an inadequate price although, after the sale was made, a considerably higher price was offered by another person, who, by requiring an immediate acceptance or declination of his offer, in effect reserved power to withdraw it at any time.

pp. 608, 609

*Decided October 26th, 1922.*

Appeal from the Circuit Court for Baltimore County, In Equity (DUNCAN, J.).

Bill by William J. Hiss and Frederica Grube Hiss against Mary J. Hiss Duncan and others to obtain a partition sale of certain land. A sale having been made and reported by trustees appointed for the purpose, said Mary J. Hiss Duncan filed exceptions thereto. From a decree overruling said exceptions and confirming the sale, said exceptant appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and ADKINS, JJ.

*Elmer J. Haile* and *Edw. J. Colgan, Jr.,* for the appellant.

*Bernard J. Medairy* and *Charles F. Harley,* for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

The issue involved in this appeal is one of fact rather than law. The only legal question involved has been repeatedly settled by numerous decisions in this State and elsewhere. The issue of fact is whether the sum of $52,500 was or was not the fair value of the property hereinafter mentioned on the 16th of November, 1921.

The case, as it comes before this Court, is an appeal from the Circuit Court for Baltimore County, sitting as a court of equity, in which a private sale was made and reported by trustees, and exceptions to which, filed by Mary J. H. Duncan, were overruled and the sale ratified.

The circumstances leading up to the sale were that Mrs. Duncan and Mr. William J. Hiss were tenants in common of about one hundred and eighty-one acres of land, lying for the most part in Baltimore County and a small amount of it lying within the present limits of Baltimore City. There was an indebtedness for which the property was liable amounting in the aggregate to about $30,000. This was partly in the form of a mortgage, upon which the interest was long overdue, in fact had never been paid since the original execution of the mortgage; about four years' taxes, and numerous judgments and pending suits which would soon have become judgments and liens upon the land. In this condition the bill was filed in the Circuit Court by William J. Hiss for a sale of the property to satisfy the various outstanding claims and a division of any sum which might be left thereafter between himself and sister.

The decree for sale was passed on the 7th day of July, 1921, and by its terms the trustees named in it were authorized and directed to dispose of the property "at either private or public sale in their discretion."

Advertisement was made of a public sale, to be held on August 9th, in a number of newspapers, and hand bills announcing the sale were widely distributed among persons likely to be interested in the purchase. When the day named

in the advertisement arrived, the property was offered both in lots and as a whole, and the best bid then made was $39,750. At this bid the trustees withdrew the property, not deeming the price adequate, but made public announcement at the time that they would be glad to receive bids for a sale at private sale at any time.

Looking to the sale at the earliest practicable date, they seem to have made unusual endeavors to secure an offer of a fair value for the property, and not receiving any bid which appealed to them as such, they again advertised the property for sale at public sale to be held on November 16th, 1921. One or two days before the date set for this second offering of the property, they received an offer at private sale of $52,-500, or $12,750 in excess of the best bid which had been made at the time of the offering of the property in August. This offer at private sale the trustees accepted, and on the 18th of November reported the same to the court. That report was signed by all three of the trustees, including Mr. Schnepfe, who had been appointed a trustee at the instance of Mrs. Duncan. Thereafter, and just before the date for the final ratification of the sale, an offer was made for the property by the Canton Company of Baltimore of $57,500. This the trustees declined to consider and the present exceptions, while several in number, amount really to but two; first, that the price at which the property was reported as sold, $52,500, was far less than the real value of the property, or, as stated, that it was grossly inadequate; and second, that the sale was not fairly made.

Taking these up in the inverse order, there is no testimony whatever to warrant the charge that the sale was not fairly made. By the express terms of the decree the trustees were authorized to sell the property at either public or private sale. They had endeavored to sell the property at public sale in August after an unusual amount of advertising. A good crowd was in attendance, notwithstanding which there was no bid which in the judgment of the trustees

did represent the value of the property, and acting fully within their power they withdrew the property at that time. Between then and November they appear to have continued their efforts to effect a private sale of the property, but without results until they received the offer of Purdum and Butler of $52,500 in November. While this offer was less than Mrs. Duncan had hoped to see realized from the sale of the property, yet it is apparent she had very inflated notions of its value.

No one could at this time foresee with the least degree of certainty what the future might be, whether the enhancement of the values of real estate which took place during the war would continue, or whether it would recede. One thing only was certain, and that was that a sale must be effected and effected quickly, by reason of the large amount of taxes due, the mortgage, for which a decree of foreclosure had already been entered, and judgments, which were piling up in a way to become liens upon the property, on which writs of *fi. fa.* might at any time be issued. The decree had invested the trustees with power to make a sale of the property acting upon their own discretion, and there is nothing to indicate that they in any way abused that discretion. So it cannot properly be said that the sale was not in all respects fairly made.

As to the inadequacy of the price at which the property was sold, numerous witnesses were produced upon the part of the exceptant and the purchaser. The evidence given in behalf of the exceptant was largely of the hearsay description, derived in the main from vague reports as to the price paid for the sales of land more or less remote from that involved in this case, or was an individual estimate of value without anything to show that the individual who made the estimate was at all qualified to form such an estimate.

The witnesses called upon the part of the purchasers showed an actual personal knowledge far more intimate than that possessed by the witnesses for the exceptant as to the

value of real estate in that immediate section, where this property was located, and while they vary somewhat in the figures which they give as to the value of the property, yet one and all are sufficiently close to the price for which the sale was made to warrant the conclusion that, at the time of the sale, $52,500 was the fair market value of the property.

One of the witnesses of the exceptant, a real estate broker, had for some time been endeavoring to get the Canton Company to make an offer for this property at private sale, but had not succeeded in getting an offer of a size that he would even venture to submit to the trustees, and it was not until after the sale had been actually made that the so-called offer of the Canton Company was made. The circumstances surrounding this offer have been criticised along the line that it was not really an offer but merely a request for an option upon the property. The certified check, however, which accompanied it, is of itself strong evidence that it was intended as an offer, and at the same time the condition requiring a prompt, almost immediate acceptance or declination of the offer, was such as left it entirely within the power of the Canton Company to withdraw the offer at any time. For this reason, if for no other, the trustees would have been fully justified in declining to consider it. But they had in the meantime made the sale to Purdum and Butler, and this offer came with full knowledge upon the part of the Canton Company of the sale made and the price which it was made to Purdum and Butler. This is a species of bidding which cannot be, and never has been, looked upon with favor by the courts of this State.

For these reasons the order appealed from will be affirmed.

*Order affirmed, appellants to pay the costs.*